[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**

**U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 28, 2003
THOMAS K. KAHN
CLERK**

_____

No. 02-14820

_____

D.C. Docket No. 01-00201-CV-HLM-4

DONNA BARGER,

Plaintiff-Appellant,

versus

CITY OF CARTERSVILLE, GEORGIA,
SAM GROVE, in his official Capacity as
Cartersville City Manager,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(October 28, 2003)**

Before BARKETT and MARCUS, Circuit Judges, and MILLS[*], District Judge.

MILLS, District Judge:

_____

[*] Honorable Richard Mills, United States District Judge of the Central District of Illinois, sitting by designation.

**FACTS**

Donna Barger began working for the City of Cartersville, Georgia, in January 1978. She rose to the position of Personnel Director in 1997.

In November 2000, Barger underwent back surgery to repair a ruptured disc. On January 8, 2000, shortly after Barger returned to work, City Manager Sam Grove demoted Barger from her $42,000.00 per year Personnel Director position to a $14.62 per hour customer service representative. She reacted by filing a discrimination charge with the Equal Employment Opportunities Commission (the "EEOC") on January 22, 2001, alleging that her demotion violated the Family Medical Leave Act, the Americans With Disabilities Act, and the Age Discrimination in Employment Act.

The EEOC issued Barger a right to sue letter on June 11, 2001. On July 18, 2001, Barger sued Grove and the City in district court to win back the Personnel Director position from which she had been demoted.

Because Barger's demotion resulted in less pay, she decided to seek Chapter 7 bankruptcy protection. Her bankruptcy attorney prepared a Chapter 7 petition which, among other things, stated that Barger had not been a party to any suit or administrative proceeding in the year preceding her petition. On August 27, 2001,

Barger signed a Statement of Financial Affairs which declared under penalty of perjury that she read the bankruptcy petition and that its contents were true and accurate. She filed her bankruptcy petition on September 4, 2001, and the bankruptcy schedule she filed with her petition did not list her discrimination suit as an asset. On September 5, Barger's employment discrimination attorney sent a letter to Grove and the City which sought to negotiate a settlement in a way that would benefit Barger and not her creditors. Specifically, the attorney proposed that Barger be allowed to retire approximately two years early at the City's expense.

On November 5, 2001, about three months after the failed settlement proposal, Barger filed a motion to amend her discrimination suit by adding claims for compensatory and punitive damages. The District court allowed the motion on November 7, 2001. The next day, Barger attended a creditors' meeting as part of her bankruptcy petition. Barger told her bankruptcy attorney that she had a discrimination suit pending and she orally informed the bankruptcy trustee about the case's existence during the creditors meeting. However, when the trustee asked Barger about the case, she told him that the discrimination suit merely sought reinstatement of her position as Personnel Director.

As Barger's discrimination suit continued to proceed in the District court,

Grove and the City served her with discovery requests. In an interrogatory dated October 31, 2001, Sam Grove asked Barger to list any legal proceedings to which she was or had been a party and to describe the nature of the proceedings. On December 10, 2001, Barger responded by stating that she had gotten divorced in 1976. She did not mention anything about her pending bankruptcy petition.

On January 12, 2002, the bankruptcy court granted Barger a complete discharge of her debts, a figure which amounted to $58,664. Since it was a "no asset discharge", no assets were distributed and the trustee was relieved of all further duties.

On February 7, 2002, Barger sent Grove and the City documents relating to their discovery requests. Included in these documents was a copy of the bankruptcy court's discharge order and its one page explanation of the order. Upon receiving these materials, Grove and the City moved for summary judgment on the basis of judicial estoppel.

Barger tried to thwart Grove and the City's efforts by reopening her bankruptcy petition and listing her discrimination claim as an asset. She moved the bankruptcy court to reopen her case and on June 5, 2002, the bankruptcy court held a hearing to address the issue. Barger, Grove, and the City all argued at the hearing. Ruling from the bench, the bankruptcy judge allowed Barger to reopen

4

her case.

A week later, on June 12, 2002, the District court dismissed Barger's discrimination case by entering summary judgment against her. The District court's order determined that Barger was estopped from bringing suit and, alternatively, she lacked standing to sue. Subsequently, the bankruptcy court issued a June 18, 2002, written order finding that Barger "did not conceal the [discrimination] claim or attempt to obtain a financial advantage for herself". In the bankruptcy court's estimation, the failure to list the discrimination suit in Barger's Statement of Financial Affairs was caused by her bankruptcy attorney's "inadvertence" and had no substantive effect on the bankruptcy petition.

On June 24, 2002, Barger, with the bankruptcy court's decision in hand, moved the District court for reconsideration of its summary judgment order. The District court denied Barger's motion on August 7, 2002, and she timely filed a Notice of Appeal on September 3, 2002.

## ANALYSIS

### A. Standing

A plaintiff has standing to assert a claim if: (1) she can show that she has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to

conduct of the defendant; and (3) it is likely, not just merely speculative, that the injury will be redressed by a favorable decision. See Kelly v. Harris, 331 F.3d 817, 819-20 (11th Cir. 2002) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992)(additional citations omitted)). It is undisputed that Barger's employment discrimination claims satisfy all of these requirements. The issue is really about who can litigate the claim, Barger or the Trustee.

Determining the identity of the party who can properly assert the employment discrimination claims begins with Federal Rule of Civil Procedure 17(a). Rule 17(a) states that "[e]very action shall be prosecuted in the name of the real party in interest." Id. It also provides that "[n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest." Id. Because Barger filed her bankruptcy petition after she filed her discrimination claims her discrimination claims are the property of the bankruptcy estate. See 11 U.S.C. § 541(a) (property of bankruptcy estate includes all potential causes of action that

6

exist at the time petitioner files for bankruptcy). Accordingly, the Trustee is the real party in interest and it has exclusive standing to assert any discrimination claims. See Weiburg v. GTE Southwest Incorporated, 272 F.3d 302, 306 (5th Cir. 2001)(finding that a trustee is the real party in interest with exclusive standing to assert claims which are property of the bankruptcy estate)(citations omitted)).

Although it was Barger who pursued the discrimination claims in the district court and it was she who filed this appeal, the Trustee may succeed her position from this point forward by virtue of Federal Rule of Civil Procedure 25(c). Rule 25(c) states that "[i]n case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom interest is transferred to be substituted in the action or joined with the original party." Id. Since the district court never directed the Trustee to substitute for Barger or join her in this suit, the Trustee simply takes Barger's place from hereon.

### B. Collateral Estoppel

Barger argues that the bankruptcy court's oral ruling on June 5 collaterally estopped the district court's June 12 written decision. Barger did not raise this issue in the district court. Thus, she is barred from raising the issue on appeal. See McGinnis v. Ingram Equip. Co. Inc., 918 F.2d 1491, 1495 (11th Cir. 1990)(en

7

banc) ("A general principle of appellate review is that an appellate court will not consider issues not presented to the trial court.").

Even if Barger had raised and argued collateral estoppel in the district court, her argument would have failed there as it would here. To successfully invoke collateral estoppel, a party must demonstrate that: (1) the issue at stake in a pending action is identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior suit; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding. See In re McWhorter, 887 F.2d 1564 (11th Cir. 1989) (citation omitted).

A court's decision does not become an entry of judgment until the date it is entered as a written order. See Fed.R.Civ.P. 58. Although the bankruptcy court orally ruled in Barger's favor during its June 5 hearing on the judicial estoppel issue, it did not enter a written order until June 18. The district court entered a written summary judgment order against Barger on June 12. Since the district court's written order preceded the bankruptcy court's written order, the district court's decision was controlling. Id. More importantly, as neither the City nor

8

Grove were creditors of Barger, it appears that they lacked standing to litigate the judicial estoppel issue in the bankruptcy court. Absent standing to participate in the bankruptcy hearing, it is as if neither the City nor Grove ever argued before the bankruptcy court. As such, Barger could not show that the City or Grove had a full and fair opportunity to litigate the judicial estoppel issue in an earlier proceeding. See In re McWhorter, 887 F.2d 1564.

### C. Judicial Estoppel

Judicial estoppel is an equitable doctrine that precludes a party from "asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." See Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1284 (11th Cir.2002). The doctrine exists "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." Id. (quoting New Hampshire v. Maine, 532 U.S. 742, 749-50, 121 S.Ct. 1808, 1814, 149 L.Ed.2d 968 (2001)). We review a district court's application of judicial estoppel for abuse of discretion. See id. at 1284.

The applicability of judicial estoppel largely turns on two factors. Id. First, a party's allegedly inconsistent positions must have been "made under oath in a prior proceeding." Id. (quoting Salomon Smith Barney, Inc. v. Harvey, 260 F.3d

1302, 1308 (11th Cir. 2001), pet. for cert. filed, No. 01-801, 70 U.S.L.W. 3395 (U.S. Nov. 6, 2001)). Second, the "inconsistencies must be shown to have been calculated to make a mockery of the judicial system." Id. (quoting Salomon Smith Barney, Inc., 260 F.3d at 1308). "[T]hese two enumerated factors are not inflexible or exhaustive; rather, courts must always give due consideration to all of the circumstances of a particular case when considering the applicability of this doctrine." Id. at 1286.

**1) Application of Judicial Estoppel to Barger's Monetary Claims**

There is no debate that Barger submitted her Statement of Financial Affairs under oath to the bankruptcy court. Therefore, the issue here is intent. For purposes of judicial estoppel, intent is a purposeful contradiction—not simple error or inadvertence. Id. "[D]eliberate or intentional manipulation can be inferred from the record," where the debtor has knowledge of the undisclosed claims and has motive for concealment. See id. at 1287.

In Burnes, the Court found that the record "contain[ed] sufficient evidence from which to infer intentional manipulation by" the debtor. Id. at 1287. In that case, the debtor had a lawyer for the entirety of his bankruptcy proceedings. Id. at 1284. At the time the debtor filed his Chapter 13 petition, he was not participating in a lawsuit and indicated that fact on his schedule of assets and statement of

10

financial affairs forms. Id. Six months after filing bankruptcy, he filed an employment discrimination charge against his employer and subsequently filed an employment discrimination suit. Id. He never amended his Chapter 13 schedule of assets or statement of financial affairs to include his discrimination lawsuit. Id. Later, he converted his Chapter 13 petition to a Chapter 7 bankruptcy. As part of the conversion, he was ordered to file amended or updated schedules to the Chapter 7 trustee reflecting any financial changes since he first filed schedules with the bankruptcy court. He did not report the pending lawsuit against his employer, and when he filed the amended schedules, he certified to the bankruptcy court that the schedules were true and accurate. He then received a "no asset," complete discharge of his debts. The bankruptcy court, the bankruptcy trustee, and his creditors never knew about the pending lawsuit. Id.

Based on these facts, the district court determined that the debtor was judicially estopped from asserting his discrimination claims. Id. at 1287-88. Upon reviewing the district court's decision, this Court found that the debtor filed and pursued his claims during the pendency of his Chapter 13 case and, at the time he petitioned to convert to Chapter 7, he had already filed and was pursuing the employment claims. Thus, the Court held that it was clear that the debtor knew of his claims during the bankruptcy proceeding. Id. Moreover, the Court also found

11

that the debtor stood to gain an advantage by concealing his discrimination claims from the bankruptcy court.  Id. at 1288.  It was "unlikely [the debtor] would have received the benefit of a conversion to Chapter 7 followed by a no asset, complete discharge had his creditors, the trustee, or the bankruptcy court known of a lawsuit claiming millions of dollars in damages."  Id.  The debtor implicitly acknowledged "that disclosing this information would have likely changed the result of his bankruptcy because he now seeks to re-open his bankruptcy to include the undisclosed claims."  Id.  That evidence was sufficient for the Court to conclude that the debtor intended to mislead the bankruptcy court.  Id.

Like the plaintiff-appellant in Burnes, Barger had already filed and was pursuing her employment discrimination claim at the time she filed her bankruptcy petition. Despite this fact, neither Barger nor her attorney ever listed the discrimination claim as an asset.  And Barger did not lack an opportunity to disclose the lawsuit. In a Statement of Financial Affairs which asked debtors to list all lawsuits to which they had been parties in the year preceding their bankruptcy petition, Barger omitted any reference to her discrimination claim and then—under penalty of perjury—signed her name to indicate that she had read the statement and that it was true and correct.   The statement, of course, was false.

Nevertheless, Barger argues that several facts suggest that she did not

12

engage in any intentional manipulation. She contends that her disclosure of the employment discrimination claim to her attorney and the bankruptcy trustee, as well as the fact that she sought and was granted permission to re-open her bankruptcy proceedings, all militate against a finding of intentional manipulation. The Court disagrees.

Although it is undisputed that Barger's attorney failed to list Barger's discrimination suit on the schedule of assets despite the fact that Barger specifically told him about the suit, the attorney's omission is no panacea. As the Supreme Court stated in Link v. Wabash R.R. Co., 370 U.S. 626, 633-34, 82 S. Ct. 1386, 1386, 8 L. Ed. 2d 734 (1962), "[t]here is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent." Link v. Wabash R.R. Co., 370 U.S. 626, 633-34, 82 S. Ct. 1386, 1386, 8 L. Ed. 2d 734(1962). "[I]f an attorney's conduct falls substantially below what is reasonable under the circumstances, the client's remedy is against the attorney in a suit for malpractice. But keeping this suit alive merely because plaintiff should not be penalized for the omissions of his own attorney would be visiting the sins of plaintiff's lawyer upon the defendant."

13

Id. at 634 n.10, 82 S. Ct. 1386 n. 10 (citations omitted).

Even if Barger's failure to disclose could be blamed on her attorney, the nondisclosure could not in any event be considered inadvertent. The failure to comply with the Bankruptcy Code's disclosure duty is "inadvertent" only when a party either lacks knowledge of the undisclosed claim or has no motive for their concealment. See In re Coastal Plains, 179 F.3d 197, 210 (5th Cir. 1999). In Coastal, the debtor, Coastal Plains Inc., sued a lender shortly after it filed bankruptcy for turnover of property and damages arising from the lender's prepetition possession of the property. The bankruptcy court ordered that the lender turn over the property, but did not adjudicate Coastal's damages claim. Subsequently, Coastal's claim against the lender was sold, along with all of its assets, to Coastal's largest creditor. The creditor, in turn, pursued the damages claim against the lender and eventually obtained a multi-million dollar verdict against the lender. 179 F.3d at 202-03. The lender appealed the verdict, arguing that the purchaser of the claim, as Coastal's successor, was judicially estopped from pursuing the claim because Coastal had failed to list the claim on its bankruptcy schedules. Judicial estoppel was rejected by both the bankruptcy court and district court based on the reasoning that Coastal's failure to list the claim had been inadvertent.

14

The Fifth Circuit reversed and held that the bankruptcy court abused its discretion in failing to apply judicial estoppel to bar the claim. 179 F.3d at 204. The court noted that its "review of the jurisprudence convinces us that, in considering judicial estoppel for bankruptcy cases, the debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." Id. at 210. The court found that Coastal both knew of the facts giving rise to the inconsistent positions and had a motive to conceal the claims. Id. at 212 (noting that had the claims, believed to be worth over $10 million, been disclosed, Coastal's unsecured creditors might have opposed lifting the stay, and the bankruptcy court might have reached a different decision). Coastal's CEO, who signed Coastal's schedules, relied on its attorneys to provide the appropriate information in the schedules, and concluded that the omission of the claim had probably been an oversight. Id. In the face of this argument, the Fifth Circuit concluded that "Coastal's claimed 'inadvertence' is not the type that precludes judicial estoppel because Coastal knew of the facts giving rise to its inconsistent positions and had a motive to conceal the claims." Id.

This Circuit relied on Coastal when it decided Burnes. The Court quoted Coastal's conclusion that "the debtor's failure to satisfy its statutory disclosure

15

duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." Burnes, 291 F.3d at 1287. Furthermore, the recent opinion in De Leon confirmed that Burnes established the rule for this Circuit (as taken from Coastal) "that judicial estoppel bars a plaintiff from asserting claims previously undisclosed to the bankruptcy court where the plaintiff both knew about the undisclosed claims and had a motive to conceal them from the bankruptcy court . . . ." 321 F.3d at 1291 (extending that rule to Chapter 13 bankruptcy cases).

In light of Burnes and DeLeon, it is difficult to argue that Barger should not be judicially estopped from asserting the discrimination claims she failed to disclose in her bankruptcy petition. Barger appeared to gain an advantage when she failed to list her discrimination claims on her schedule of assets. Omitting the discrimination claims from the schedule of assets appeared to benefit her because, by omitting the claims, she could keep any proceeds for herself and not have them become part of the bankruptcy estate. Thus, Barger's knowledge of her discrimination claims and motive to conceal them are sufficient evidence from which to infer her intentional manipulation. See Burnes at 1287.

The fact that Barger informed the trustee about her discrimination suit during the creditor's meeting does not aid her cause. When the bankruptcy trustee

16

asked Barger for the monetary value of the lawsuit, she informed him that she only sought reinstatement of her previous position with the City of Cartersville. Barger did not tell the trustee that she was also seeking backpay, liquidated damages, compensatory damages, and punitive damages. She did not inform the trustee about these additional damages even though she added them to her prayer for relief a mere two days before the creditors meeting. Thus, it seems clear that Barger deceived the trustee. The bankruptcy court reasoned away Barger's conduct by concluding that it was ultimately the trustee's responsibility to investigate the lawsuit as property of the estate. The Court is not persuaded by the bankruptcy court's reasoning. The foremost responsibility in this matter was for Barger to fully disclose her assets. She did not satisfy her duty. Instead, she dissembled to the trustee and indicated that her discrimination claim had no monetary value. As such, the trustee can hardly be faulted for not further investigating Barger's discrimination suit.

Finally, Barger's attempt to reopen the bankruptcy estate to include her discrimination claim hardly casts her in the good light she would like. She only sought to reopen the bankruptcy estate after the defendants moved the district court to enter summary judgment against her on judicial estoppel grounds. "Allowing [a debtor] to back-up, re-open the bankruptcy case, and amend his

bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them. This so-called remedy would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtor's assets." Burnes at 1288 (citation omitted). As such, Barger's disclosure upon re-opening the bankruptcy estate deserves no favor.

**2) Application of Judicial Estoppel to Barger's Injunctive Relief Claims**

In Burnes, the Court decided that while judicial estoppel barred the plaintiff-appellant from pursuing claims for monetary damages, the doctrine did not prohibit him from pursuing claims which add no monetary value to the bankruptcy estate. Id. at 1289. Thus, the Court allowed the plaintiff-appellant to proceed on his claims for injunctive relief.

Barger's claim for injunctive relief (*i.e.* her request for reinstatement) would have added nothing of value to the bankruptcy estate even if she properly disclosed it. Therefore, like the plaintiff-appellant in Burnes, judicial estoppel does not prohibit Barger from pursuing any claims for injunctive relief that she may have.

**CONCLUSION**

Accordingly, we AFFIRM the district court's judgment insofar as it

18

dismissed Barger's claims for monetary damages. However, we REVERSE the district court's decision to the extent that it prohibits Barger from seeking injunctive relief.

AFFIRMED in part and REVERSED in part.

BARKETT, Circuit Judge, dissenting:

I dissent because I believe that the circumstances of this case quite plainly militate against application of the doctrine of judicial estoppel. Donna Barger not only revealed her pending lawsuit to her bankruptcy attorney, who admitted he simply neglected to list the suit on Barger's bankruptcy schedule due to an oversight, but she also specifically announced the suit at an open creditors' meeting to the bankruptcy trustee.

The majority cites the appropriate standards for judicial estoppel under Eleventh Circuit law: a party must have taken inconsistent positions under oath, and these inconsistencies "must be shown to have been calculated to make a mockery of the judicial system." Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1284 (11th Cir. 2002). As the majority also notes, these two factors "are not inflexible," and courts must "always give due consideration to all of the circumstances of a particular case." Id. Because Barger's actions clearly were not "calculated to make a mockery of the judicial system," id., I believe the district court abused its discretion in applying the doctrine.

After filing for Chapter Seven protection, Barger signed several bankruptcy forms prepared by her attorney, one of which failed to list her pending lawsuit against the city. However, at a meeting of creditors two months later, Barger

20

orally informed the bankruptcy trustee of her discrimination lawsuit. Although she

described her suit as one for reinstatement of her prior position and did not

specifically mention the other damages sought,[1] this voluntary disclosure

undermines any suggestion that she intended to hide the suit from the trustee or

the creditors. Moreover, had she listed the suit on the bankruptcy schedule, she

would have been able to pursue the litigation after it was abandoned by the

trustee.[2]

I cannot agree with the majority that relief under these facts is foreclosed by

Burnes, 291 F.3d at 1287-88, and De Leon v. Comcar Industries, 321 F.3d 1289

(11th Cir. 2003). The debtors in those two cases never disclosed their pending

lawsuits to their respective bankruptcy trustees. See De Leon, 321 F.3d at 1291-92

("Despite De Leon's continuing duty to disclose all assets or potential assets to the

bankruptcy court, he did not amend his bankruptcy documents . . . ."); Burnes, 291

F.3d at 1288 ("Nevertheless, he once again failed to disclose the pending lawsuit

---

[1]Barger is not an attorney, and her description could simply reflect how a non-lawyer might have perceived the lawsuit. There is certainly no indication of intentional deception on her part.

[2]Although the majority infers that Barger benefitted from non-disclosure, one might equally infer that the trustee's decision not to pursue the claim after it was brought to his attention (and his failure to act upon it subsequently) implied that the outcome in Barger's bankruptcy case would not have changed. See also In re Barger, 279 B.R. 900, 907 (Bankr. N.D. Geo. 2002) (drawing this conclusion).

to the bankruptcy court."). Barger, by contrast, did disclose her claim, even if not in the legally appropriate way.

The majority correctly notes that under our case law, a plaintiff may not show "inadvertence" when she knew of the facts giving rise to the inconsistency in her positions and had a motive to conceal the inconsistency. However, Burnes and De Leon do not hold that the failure to meet the specific "inadvertence criteria" automatically implies an intent to "make a mockery of the judicial system." Although a finding of inadvertence completely precludes judicial estoppel under Burnes, failure to meet the specific inadvertence criteria does not mean that judicial estoppel must apply.[3] Rather, a party should be able to use "all of the circumstances" of her particular case in order to show that a court should not apply the equitable doctrine of judicial estoppel against her. I believe that Barger has made such a showing in this case, and I would reverse the district court.

---

[3]Although the DeLeon court recast the holding in Burnes as triggering judicial estoppel whenever the plaintiff had knowledge of the undisclosed claim and motive to conceal it, 321 F.2d at 1291, the DeLeon court specifically inferred an "intent to make a mockery of the judicial system" in the case before it. Id. at 1292 (internal quotation marks omitted).