[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 06-12417
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 28, 2007
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-02053 CV-RLV-1

JOSE CASANOVA,

                                    Plaintiff-Appellant,

    versus

PRE SOLUTIONS, INC.,
H.J. GALLETLY,

                                    Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(March 28, 2007)**

Before EDMONDSON, Chief Judge, TJOFLAT and GIBSON,[*] Circuit Judges.

PER CURIAM:

---

[*]Honorable John R. Gibson, United States Circuit Judge for the Eighth Circuit, sitting by designation.

Jose Casanova ("Plaintiff") brought this action under Title VII of the Civil Rights Act of 1964 ("Title VII") against his former employer, PRE Solutions ("PRE"), and H.J. Galletly ("Galletly") (collectively, "Defendants"). The district court granted Defendants' motion for summary judgment. We affirm.

## I. Background

In 2001, PRE's Chief Executive Officer, David Traversi ("Traversi"), and Senior Vice President of Sales and Marketing, Jerry Ferlisi ("Ferlisi"), hired Plaintiff, a U.S. citizen of Cuban descent, as a District Sales Leader ("DSL") to set up and manage the company's new Hispanic sales division. Cindy Daly ("Daly") served as the direct supervisor over Plaintiff and all other DSLs.

Plaintiff alleges that Daly exhibited racial animus toward him, often referring to him by Hispanic names other than his own, such as "Carlos" and "Julio." He also alleges that, on one occasion after Plaintiff submitted an expense report covering a meal at a Miami restaurant, Daly asked Plaintiff, "Were you guys having some sort of fiesta at the company's expense?" Later, while discussing another expense report, Daly told Plaintiff, "You people can't add." Once, at a trade show dinner, Daly referred to Plaintiff as a "fat wetback" in front of other

2

employees. Plaintiff also contends that, in conducting company business, Daly treated Plaintiff differently than she treated other DSLs. He claims that Daly did not allow him to use professional recruiters to hire sales representatives, scrutinized his expense reports "very, very closely," denied his requests for Spanish marketing materials, increased the sales quota for his division, and, at one point, required him to drive rather than fly from Miami to Atlanta. Daly was unsatisfied with Plaintiff's job performance and communicated these problems to Traversi, who was also concerned that Plaintiff "had real performance problems that needed to be addressed."[1]

On 21 May 2001, Plaintiff filed his first discrimination charge with the Equal Employment Opportunity Commission ("EEOC").[2] A few days later, Daly sent Traversi an email in which Daly wrote, "I want to make sure that we are totally prepared to make this end when the time comes." Attached to the email was a memorandum written by Daly discussing a list of tasks assigned to Plaintiff. Responding to Daly's request for comments before sending the memorandum, Traversi wrote, "excellent. go for it."

---

[1]Traversi and Daly met with Plaintiff to discuss these concerns and to develop a list of strategic tasks for Plaintiff to complete. The parties now dispute whether and to what extent Plaintiff completed these tasks.

[2]After Plaintiff filed his initial EEOC charge, he met with human resource managers at PRE to discuss his complaints; but he did not provide full and complete information.

Later, Traversi met with Plaintiff and told him that Traversi understood Daly had not treated Plaintiff properly. Traversi then gave Plaintiff a memorandum informing him of Traversi's decisions to eliminate the Hispanic division and to promote Plaintiff to Business Development Leader, Independent Sales, in which position he would report directly to Galletly.[3] Although Plaintiff claims this change was a sham promotion into a "dead-end" job,[4] the change resulted in a $10,000 increase in salary, a wider commission structure, and a higher reporting status.

On 21 August 2001, Plaintiff filed a second charge with the EEOC. Two days later, Plaintiff filed a voluntary petition to declare Chapter 13 bankruptcy. Later, Plaintiff filed his Statement of Financial Affairs ("SFA") in bankruptcy court. The SFA did not disclose his two pending EEOC actions, despite the requirement that he list "all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this

_____

[3]Galletly had replaced Ferlisi as the company's Senior Vice President of Sales and Marketing.

[4]Plaintiff asserts that the problems associated with his new position were caused by the lack of a formal job description and his ostracization from the company -- including his alleged exclusion from the company's computer network and email system, as well as his isolation from sales meetings and management decisions. Galletly, on the other hand, claims that he saw no activity or contribution from Plaintiff in his new position.

bankruptcy case."[5]  Within a month of Plaintiff's second filing with the EEOC,

PRE experienced a reduction in force ("RIF"), which eliminated 33 positions from

the company and resulted in the discharge of both Plaintiff and Daly.  CEO

Traversi made the decision to eliminate Plaintiff's position during the RIF.

After receiving a right-to-sue letter from the EEOC, Plaintiff brought suit

under Title VII alleging (1) that PRE subjected him to disparate treatment because

of his national origin; (2) that PRE retaliated against him for his complaints and

EEOC charges by transferring him into a new position and ultimately discharging

him; and (3) that Daly's harassment resulted in a hostile work environment.  The

district court granted summary judgment for Defendants after determining that

Plaintiff's claims for damages were barred under the doctrine of judicial estoppel

and that his claims for injunctive relief failed on the merits.


## II. Discussion


We review a district court's application of the doctrine of judicial estoppel

for an abuse of discretion.  <u>Burnes v. Pemco Aeroplex, Inc.</u>, 291 F.3d 1282, 1284

---

[5]Plaintiff later sought and obtained voluntary dismissal of his bankruptcy case.

(11th Cir. 2002).  And, we review <u>de</u> <u>novo</u> a district court's grant of summary judgment.  <u>Rojas v. Florida</u>, 285 F.3d 1339, 1341 (11th Cir. 2002).

### A. Judicial Estoppel Bars Plaintiff's Claims for Damages

The equitable doctrine of judicial estoppel precludes a party from "asserting a claim in a legal proceeding that is inconsistent with a claim made by that party in a previous proceeding."  <u>Barger v. City of Cartersville</u>, 348 F.3d 1289, 1293 (11th Cir. 2003) (citation and internal quotation marks omitted).  The doctrine bars a plaintiff from pursuing employment discrimination claims for damages that were not disclosed in a prior bankruptcy proceeding, where the plaintiff knew of the claims and had a motive to conceal them from the court.  <u>Burnes</u>, 291 F.3d at 1287-88; <u>Barger</u>, 348 F.3d at 1293-97; <u>De Leon v. Comcar Indus.</u>, 321 F.3d 1289, 1291 (11th Cir. 2003).[6]

---

[6]Plaintiff argues the district court abused its discretion by allowing Defendants to amend their motion for summary judgment to include the judicial estoppel argument because they had not pleaded this defense in their answer.  Judicial estoppel, however, is an equitable doctrine that "protects the integrity of the judicial system, not the litigants." <u>Burnes</u>, 291 F.3d at 1286.  Because Plaintiff had full opportunity to respond to the argument below, the district court did not abuse its discretion, even if the court considered the issue <u>sua</u> <u>sponte</u>. <u>See</u> <u>Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.</u>, 337 F.3d 314, 325 (3d Cir. 2003).

6

That the SFA that Plaintiff filed in his prior bankruptcy case did not disclose his two EEOC complaints is undisputed. Even though Plaintiff did not file a lawsuit before or during the pendency of his bankruptcy petition, the pending EEOC charges constitute "administrative proceedings" and "[o]ther contingent and unliquidated claims" that Plaintiff was required to disclose on his SFA. The "property of bankruptcy estate includes all potential causes of action existing at time petitioner files for bankruptcy." Barger, 348 F.3d at 1292 (emphasis added) (citing 11 U.S.C. § 541(a)).

At the summary judgment stage, we may infer from the record that Plaintiff purposely concealed the EEOC claims from the bankruptcy court because he filed his bankruptcy petition only two days after filing the second EEOC charge. See Burnes, 291 F.3d at 1287. Plaintiff "stood to gain an advantage by concealing the claims from the bankruptcy court." Id. at 1288. That Plaintiff later voluntarily dismissed the bankruptcy case does not alter this analysis because the relevant inquiry is his intent at the time of nondisclosure. The district court, therefore, did not abuse its discretion by concluding that judicial estoppel barred Plaintiff from asserting claims for damages.

B. Plaintiff's Claims for Injunctive Relief

7

The doctrine of judicial estoppel does not bar Plaintiff's claims for injunctive relief.  See id. at 1289.   So, we turn now to the district court's grant of summary judgment in favor of Defendants on Plaintiff's request for injunctive relief in the form of reinstatement.

      1.  Disparate Treatment

To prevail on a Title VII discrimination claim, a plaintiff must establish that he suffered an "adverse employment action," which is a "serious and material change in the terms, conditions or privileges of employment."  Davis v. Town of Lake Park, 245 F.3d 1232, 1238-39 (11th Cir. 2001).  A plaintiff also must prove that the decision maker acted with discriminatory intent, as established by either direct or circumstantial evidence.  See Hawkins v. Ceco Corp., 883 F.2d 977, 980-81 (11th Cir. 1989).[7]

In this case, the only evidence of discriminatory intent proffered by Plaintiff is Daly's harassment, evidence that relates only to Daly's state of mind.  But,

---

[7]We evaluate discrimination claims based on circumstantial evidence under the familiar burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 93 S. Ct. 1817 (1973).

Daly's disparate acts against Plaintiff affecting the conditions of his employment[8] are not sufficiently serious and material to rise to the level of "adverse employment actions" under Title VII. Although Plaintiff alleges that Daly was instrumental in Traversi's decision to move Plaintiff out of the DSL position,[9] this promotion was not adverse because Plaintiff suffered no material loss of "pay, prestige, or responsibility." Hinson v. Bd. of Educ., 231 F.3d 821, 829 (11th Cir. 2000). To the extent that Plaintiff contends that his ultimate discharge -- the only actionable adverse employment action in this case -- was motivated by a discriminatory intent, we conclude that Plaintiff has failed to present direct or circumstantial evidence of such intent. Traversi, not Daly (who was also let go), made the decision to discharge Plaintiff in the RIF. Plaintiff also has not established that the RIF was a mere pretext for discrimination.[10] Thus, the district court correctly granted summary judgment on Plaintiff's disparate treatment claim.

---

[8]Daly's disparate business treatment includes closer scrutiny of expense reports, denying access to outside recruiters, refusing to provide marketing materials in Spanish, and increasing sales quotas.

[9]CEO Traveri's response to Daly's email is insufficient to show discriminatory intent on the part of Traversi.

[10]The undisputed evidence shows that PRE conducted the company-wide RIF in an effort to restructure the company and that Traversi and Galletly felt that Plaintiff did not meet their expectations in his new position. Plaintiff has failed to show that these explanations are not honest. See Cooper v. Southern Co., 390 F.3d 695, 730 (11th Cir. 2001).

## 2. Retaliation

Plaintiff also alleges that PRE engaged in retaliatory action against him for his internal complaints and for filing EEOC charges. Although Plaintiff has established a prima facie case of retaliation,[11] he has not shown that PRE's legitimate, non-discriminatory reason for his termination -- the company's RIF -- was a pretext for retaliating against his statutorily protected expression. Thus, the district court did not err in granting summary judgment in favor of Defendants on Plaintiff's retaliation claim.

## 3. Hostile Work Environment

Although the district court reached the merits of Plaintiff's hostile work environment claim, we do not do so because we conclude that Plaintiff is entitled to neither reinstatement nor other injunctive relief on this claim. As the Supreme Court has commented, "[i]t would be both inequitable and pointless to order the reinstatement of someone the employer would have terminated, and will terminate,

---

[11]To establish a prima facie case of retaliation, a plaintiff must show the following: (1) that he engaged in statutorily protected expression; (2) that he suffered an adverse employment action; and (3) that some causal relation between the two events existed. Pennington v City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001). Plaintiff's EEOC claims constituted protected expression; his discharge was an actionable adverse employment action; and the short gap between his EEOC filing and his discharge is sufficient to infer a causal link between the two events. See Bass v. Bd. of County Comm'rs, 256 F.3d 1095, 1119 (11th Cir. 2001).

in any event and upon lawful grounds." McKennon v. Nashville Banner Publ. Co., 115 S. Ct. 879, 886 (1995).[12] Because Plaintiff's termination was the result of a lawful RIF, ordering PRE to reinstate Plaintiff would frustrate "the lawful prerogatives of the employer in the usual course of its business." Id. Thus, as a matter of law, Plaintiff was not entitled to injunctive relief on his hostile work environment claim.[13]

For these reasons, the district court's grant of summary judgment in favor of Defendants is

AFFIRMED.

---

[12]Although this rule applies "in the general class of cases where, after termination, it is discovered that the employee has engaged in wrongdoing," McKennon, 115 S. Ct. at 886, we believe the same reasoning applies here.

[13]Because reinstatement is inappropriate, Plaintiff is entitled to no other injunctive relief that is dependent on his reinstatement. See Wallace v. Dunn Const. Co., Inc., 62 F.3d 374, 380 (11th Cir. 1995).

11