PER CURIAM:
The equitable doctrine of judicial estop-pel, also known as the doctrine of preclusion of inconsistent positions, “precludes a party from asserting a ... position that contradicts or is inconsistent with a prior position taken by the same party.” 18 James Wm. Moore et al., Moore’s Federal Practice ¶ 131.13[6][a] (3d ed.2015). The doctrine differs from the doctrines of issue and claim preclusion in that the policy animating it “is not [primarily] concerned with preserving the finality of judgments” but is concerned, instead, with “the orderly administration of justice and regard for the dignity of court proceedings.” Id. ¶ 131.13[6][c]. The doctrine may be invoked by a third party: that is, someone who was not a party in the adversary’s prior proceeding and therefore would suffer no prejudice were the adversary permitted to go forward with the inconsistent position. Id. ¶ 134.33E1].[1]
This is so in our circuit. We do not require that the party invoking the doctrine have been a party in the prior proceeding. “The doctrine of judicial estoppel protects the integrity of the judicial system, not the litigants; therefore, ... [w]hile privity and/or detrimental reliance are often present in judicial estoppel cases, they are not required.” Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1286 (11th Cir.2002) (alteration in original) (quotation marks omitted) (quoting Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 360 (3d Cir.1996)).
I.
A.
The case at hand is an employment-discrimination action brought by Sandra Slater against United States Steel Corporation (“U.S. Steel”), her former employer.[2] Slater raises two issues on ap *1196 peal: (1) whether the District Court correctly granted summary judgment to U.S. Steel on her claim for “racial ... discrimination,” and (2) whether the District Court correctly dismissed other employment-discrimination claims based on judicial estop-pel that had proceeded past summary judgment and were set for trial. We af- ■ firm the District Court on both issues.[3]
Twenty-one months after bringing this lawsuit, Slater, represented by separate counsel, filed a Chapter 7 bankruptcy petition.[4] In filling out the Statement of Financial Affairs part of her petition, Slater, under penalty of perjury, answered “none” to the Personal Property Schedule B question asking whether she had any “contingent and unliquidated claims” and “none” to the Statement of Financial Affairs question asking whether she was, or had been within one year immediately preceding the filing of her petition, “a party” to any “suits and administrative proceedings.”
When U.S. Steel learned of the bankruptcy case — that Slater’s Chapter 7 petition had not disclosed the employment-discrimination claims she was pursuing against it in the District Court and that the Chapter 7 Trustee was treating the bankruptcy as a “no asset” case[5] and had filed a Report of No Distribution with the Bankruptcy Court — it moved the District Court alternatively to dismiss the case or *1197 for summary judgment. U.S. Steel argued that the case should be dismissed because Slater lacked standing to prosecute it[6] or that summary judgment should be granted under the doctrine of judicial estoppel pursuant to Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282 (11th Cir.2002), and its progeny.[7] Bumes was an employment-discrimination case like Slater’s that was dismissed because the plaintiff, who was in bankruptcy, failed to disclose the pendency of federal-district-court litigation to the Bankruptcy Court.
On receiving U.S. Steel’s alternative motions, Slater immediately amended her bankruptcy petition to identify her lawsuit against U.S. Steel and the claims being litigated.[8] Slater also filed with the District Court a memorandum in opposition to U.S. Steel’s motions and an affidavit stating that she did not intentionally withhold mention of her lawsuit in her bankruptcy petition and that when she realized what she had done, she had her bankruptcy attorney amend her answers to the Statement of Financial Affairs questions to reveal the current litigation.
In her memorandum, Slater argued that invoking the doctrine, of judicial estoppel would be inappropriate for three reasons, two based on the United States Supreme Court’s decision in New Hampshire v. Maine, 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001), the third based on the Fourth Circuit’s decision in Folio v. City of Clarksburg, 134 F.3d 1211 (4th Cir.1998). First, Slater argued that judicial estoppel would be inappropriate under New Hampshire because she had not “ ‘succeeded in persuading [the bankruptcy] court to accept [her] position’ ” that she had no claims pending against U.S. Steel, because she had not yet received a discharge of her debts by the Bankruptcy Court, and therefore had created “ ‘no risk of inconsistent court determinations’” that could pose a “threat to judicial integrity.” Second, Slater contended that judicial estoppel should not be invoked because allowing her employment-discrimination case to go forward would not give her an “ ‘unfair advantage or impose an unfair detriment on’” U.S. Steel. And third, to be es-topped, Slater argued that she “must have acted intentionally, not inadvertently” in failing to disclose the litigation against U.S. Steel in her Chapter 7 petition and, as indicated in her affidavit, her failure to disclose her claims and the litigation was inadvertent.
While U.S. Steel’s alternative motions were pending, the following occurred. First, the Bankruptcy Court approved the application of the trustee of Slater’s bankruptcy estate to employ the lawyers representing Slater in her case against U.S. Steel as special counsel for the bankruptcy *1198 estate and, in that capacity, continue to pursue the claims being litigated. Second, a short time later, Slater, through counsel, petitioned the court to convert her Chapter 7 case to a Chapter 13 case. The court granted her motion, and Slater promptly filed a Chapter 13 petition and an Amended Personal Property Schedule B. Three months later, the Bankruptcy Court affirmed the plan Slater proposed for the payment of her debts over a period of forty-two months.
The District Court ruled on U.S. Steel’s alternative motions while Slater’s plan was being carried out. The court declared moot U.S. Steel’s motion to dismiss the case on the ground that Slater lacked standing. A Chapter 13 debtor has standing to prosecute a claim of the bankruptcy estate as the debtor in possession,[9] and the court found that Slater was appearing in that capacity.
B.
The District Court concluded that the doctrine of judicial estoppel as formulated in Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282 (11th Cir.2002), and Robinson v. Tyson Foods, Inc., 595 F.3d 1269 (11th Cir.2010), controlled its decision. In Bwmes, we observed that
[i]n the Eleventh Circuit, courts consider two factors in the application of judicial estoppel to a particular case. First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system.
291 F.3d at 1285 (quotation marks and citation omitted) (quoting Salomon Smith Barney, Inc. v. Harvey, 260 F.3d 1302, 1308 (11th Cir.2001), vacated on other grounds, 537 U.S. 1085, 123 S.Ct. 718, 154 L.Ed.2d 629 (2002)). In Robinson, we observed that “[w]hen considering a party’s intent [under the second prong of our test] ... the debtor’s failure to satisfy its statutory disclosure duty is ‘inadvertent’ only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment.” 595 F.3d at 1275 (quotation marks omitted) (quoting Barger, 348 F.3d at 1295-96).
U.S. Steel was entitled to summary judgment, the District Court held, because it established both Bwmes factors as a matter of law. The court summarily dispatched Slater’s argument that U.S. Steel failed to establish the two New Hampshire factors she had cited in her memorandum in opposition to U.S. Steel’s alternative motions with the statement that Bwmes “[i]ncorporat[ed] those considerations” in “outlin[ing] [the] two factors whose presence call for the imposition of judicial es-toppel.”
The District Court viewed Bwmes and Robinson as controlling its decision because, like Slater’s case, they
involved the plaintiffs inconsistent sworn testimony in two separate proceedings, a bankruptcy proceeding and a federal employment discrimination case. In both cases, the plaintiff failed to disclose the existence of the pending lawsuit seeking monetary compensation as *1199 an asset in the bankruptcy proceeding. The Eleventh Circuit found in both cases that the plaintiff had a duty to disclose the federal lawsuit as an asset; that the failure to reflect the lawsuit in the bankruptcy case was a breach of that duty resulting in inconsistent positions under oath; that the district court, in its discretion, could infer from the record the requisite intent to make a mockery of the judicial system; and thus, that the court’s application of the doctrine of judicial estoppel to grant summary judgment was not clear error.[10]
Just like the plaintiffs in Bumes and Robinson, Slater took inconsistent positions under oath when she breached the duty to disclose her ongoing employment discrimination claims in her bankruptcy petition. So the question the District Court had to decide, in order to grant U.S. Steel summary judgment, was whether Slater’s inconsistencies were “calculated to make a mockery of the judicial system.” See Burnes, 291 F.3d at 1285 (quotation marks omitted) (quoting Salomon, 260 F.3d at 1308). In the District Court’s words, in answering that question, it had to “analyze [Slater’s] intent, because the Eleventh Circuit requires intentional contradictions, not simple error or inadvertence.” The District Court noted that, in Robinson,
the Eleventh Circuit explained that ‘the relevant inquiry is intent at the time of non-disclosure’ — the motive to conceal is measured prior to the time the adversary discovers and reveals the concealment. It further explained that ... ‘the motive to conceal stems from the possibility of defrauding the courts and not from any actual fraudulent result.’
The District Court stated, “The Eleventh Circuit emphasized, not only in Robinson but also in Bumes, that waiting until after being caught to rectify the omission is too little, too late.” In Bumes, the District Court noted,
the Eleventh Circuit ... explained] that allowing a plaintiff to amend his bankruptcy petition ‘only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them. The so-called remedy would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtors’ assets.’
Because Slater amended her Chapter 7 petition “only after U.S. Steel caught and exposed her omission,” the District Court concluded that “allowing her to do so without penalty would encourage rather than discourage debtors like her to conceal their assets unless or until they are caught.” To avoid this consequence, and because it inferred that Slater’s concealment of her claims against U.S. Steel when she filed her Chapter 7 petition was intentional and not inadvertent, the District Court concluded that she intended “to make a mockery of the judicial system” and granted U.S. Steel a final judgment dismissing her case.
Slater appeals the District Court’s judgment. For the reasons that follow, we affirm.
*1200 II.
Slater seeks the vacation of the District Court’s judgment and a remand of the case for further proceedings on two alternative grounds.[11] First, Slater argues that the District Court failed to give appropriate weight to two of the three factors the Supreme Court deemed critical in New Hampshire in considering whether to apply the doctrine of judicial estoppel. Second, she contends, the New Hampshire factors aside, that the District Court erred in applying Eleventh Circuit precedent.[12]
Judicial estoppel is an equitable doctrine. We review a trial court’s decision whether to apply the doctrine for abuse of discretion. Robinson v. Tyson Foods, Inc., 595 F.3d 1269, 1273 (11th Cir. 2010). An abuse of discretion occurs when the court bases its ruling on an incorrect legal standard. Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1096 (11th Cir.2004) (citing Martin v. Automobili Lamborghini Exclusive, Inc., 307 F.3d 1332, 1336 (11th Cir.2002)).
III.
The overriding purpose of the doctrine of judicial estoppel as stated in New Hampshire and by the federal circuits is “to prevent the perversion of the judicial process,” indeed “the essential integrity of [that] ... process, by prohibiting parties from changing positions according to the exigencies of the moment.” See New Hampshire v. Maine, 532 U.S. 742, 749-50, 121 S.Ct. 1808, 1814-15, 149 L.Ed.2d 968 (2001) (quotation marks and citations omitted) (citing the doctrine’s purpose as expressed in various federal courts of appeal). The doctrine has been applied broadly to legal proceedings in various contexts before a variety of tribunals, including administrative forums. 18 James Wm. Moore et. al., Moore’s Federal Practice ¶ 134.30, at 69-70 (3d ed.2015).
The doctrine is ordinarily applied in two scenarios. The first is where the party asserting the doctrine was a party in the earlier proceeding in which the party’s adversary took a position inconsistent with the position the adversary is currently advancing. New Hampshire presents this scenario. The second scenario is where the party asserting the doctrine was not a party in the earlier proceeding and thus did not have to deal with the position its adversary took in that proceeding. Burnes presents this scenario.[13]
*1201 In this part of our opinion, we consider whether, as Slater contends, the District Court erred, and thus abused its discretion, in failing to give appropriate weight to two of the three factors that led the Supreme Court to rest its New Hampshire decision on judicial estoppel. When we compare the factual predicate that prompted the Court to apply the doctrine in that case with the factual predicate that prompted the District Court to apply the doctrine we articulated in Bumes, we find that the factual predicates are materially dissimilar. This being so, we conclude that New Hampshire did not govern the District Court’s application of judicial es-toppel in Slater’s case.
A.
New Hampshire v. Maine involved a boundary dispute. New Hampshire brought an original action in the Supreme Court in 2000 seeking a decree fixing the New Hampshire — Maine boundary that follows the Piscataqua River. New Hampshire, 532 U.S. at 745, 121 S.Ct. at 1812. New Hampshire “contend[ed] that the inland river boundary Tun[s] along the low water mark on the Maine shore,’ ... and assertfed] sovereignty over the entire river.” Id. at 747, 121 S.Ct. at 1813 (second alteration in the original). Maine moved the Court to dismiss New Hampshire’s complaint on the ground that “two prior proceedings — a 1740 boundary determination by King George II and a 1977 consent judgment entered by th[e] Court — definitively fixed the Piscataqua River boundary at the middle of the river’s main channel of navigation” and thus should be given pre-clusive effect. Id. at 745, 121 S.Ct. at 1812. Maine argued that three distinct doctrines — claim preclusion, issue preclusion, and judicial estoppel — required the complaint’s dismissal. Def.’s Mot. to Dismiss and Br. in Supp. of Mot. to Dismiss, New Hampshire, 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (No. 130), 2000 WL 35258927, at *20-30.
The Court granted Maine’s motion. In doing so, it “pretermit[ted] the States’ competing historical claims along with their arguments on the application vel non of the res judicata doctrines commonly called claim and issue preclusion.” New Hampshire, 532 U.S. at 748, 121 S.Ct. at 1814. Instead, the Court concluded that “a discrete doctrine, judicial estoppel, best fit[] the controversy.” Id. at 749, 121 S.Ct. at 1814.
*1202 After noting that “[c]ourts have observed that the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle,” id. at 750, 121 S.Ct. at 1815 (alterations and quotation marks omitted) (quoting Allen v. Zurich Ins. Co., 667 F.2d 1162, 1166 (4th Cir.1982)), the Court, identified the three factors that “typically inform the decision whether to apply the doctrine in a particular case”:
First, a party’s later position must be “clearly inconsistent” with its earlier position. Second, ... whether the party has succeeded in persuading a court to accept that party’s earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create “the perception that either the first or the second court was misled.” Absent success in a prior proceeding, a party’s later inconsistent position introduces “no risk of inconsistent court determinations,” and thus poses little threat to judicial integrity.... [T]hird[,] ... whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.
Id. at 750-51, 121 S.Ct. at 1815 (quotation marks and citations omitted).
The Court found the second and third factors dispositive, as the following passage of its opinion indicates:
[Considerations of equity persuade us that application of judicial estoppel is appropriate in this case. Having convinced this Court to accept one interpretation of “Middle of the River, and having benefited from that interpretation, New Hampshire now urges an inconsistent interpretation to gain an additional advantage at Maine’s expense. Were we to accept New Hampshire’s latest view, the “risk of inconsistent court determinations” would become a reality. We cannot interpret “Middle of the River” in the 1740 decree to mean two different things along the same boundary line without undermining the integrity of the judicial process. •
Id. at 755, 121 S.Ct. at 1817 (citation omitted) (quoting United States v. C.I.T. Constr. Inc., 944 F.2d 253, 259 (5th Cir.1991)).
The factual predicate that prompted the Court to apply the doctrine was this: permitting New Hampshire to go forward would be unfair to Maine. New Hampshire got what it wanted in the 1977 consent decree. Now it wanted the Court to effectively undo that decree and afford it an additional advantage at Maine’s expense. The Court dismissed New Hampshire’s complaint because it could not give New Hampshire what it wanted without undermining the integrity of the judicial process.
B.
Burnes v. Pemco Aeroplex, Inc. involved inconsistent positions taken by a debtor in a Chapter 7 bankruptcy case and in an employment-discrimination case.[14] 291 F.3d 1282, 1284 (11th Cir.2002). The salient facts were these.
In July 1997, Levi Billups petitioned the Bankruptcy Court for the Northern Dis *1203 trict of Alabama for Chapter 13 relief. Id. On January 30, 1998, “Billups filed a charge of discrimination with the EEOC against Pemco.” Id. In December 1999, he and thirty-five other Pemco employees brought a lawsuit against Pemco alleging discrimination in the workplace in violation of Title VII of the Civil Rights Act of 1964. Id. Billups, however, did not amend his Chapter 13 schedule of assets to reflect the lawsuit. Id.
In October 2000, the Bankruptcy Court converted Billups’s Chapter 13 case to a Chapter 7 case and “ordered Billups to [submit] amended or updated schedules to the Chapter 7 trustee reflecting any financial changes since he first filed schedules with the bankruptcy court.” Id. Billups filed the amended schedules, but he failed to update them to reflect the lawsuit. Id. In January 2001, after the bankruptcy trustee filed a “no asset” report, the Bankruptcy Court, acting on the report, ordered Billups’s debts discharged. Id. Pemco learned of Billups’s bankruptcy after his Chapter 7 case had closed. See id. After it discovered that Billups failed to disclose the Title VII litigation in his bankruptcy filings, it moved the District Court for summary judgment, asserting judicial estoppel.
The District Court granted the motion because the material facts before it fit hand in glove with the facts in Chandler v. Samford University, 35 F.Supp.2d 861 (N.D.Ala.1999). Mem. Op. at 5, Burnes v. Pemco Aeroplex, Inc., No. 2:99-cv-03280-WMA (N.D. Ala. June 4, 2001), ECF No. 53. In that case, the plaintiff, Joyeealyn Chandler, filed a Title VII race-discrimination suit against Samford University, her former employer. Chandler, 35 F.Supp.2d at 862. After her Chapter 13 bankruptcy case had been converted to a Chapter 7 case, she failed to inform the Bankruptcy Court of the lawsuit. Id. at 862-63. The Bankruptcy Court, finding that she had no reachable assets, ordered Chandler’s debts discharged. Id. at 863. Samford University, having learned of the bankruptcy and Chandler’s failure to reveal her lawsuit during the bankruptcy proceedings, moved the District Court for summary judgment, asserting judicial estoppel. Id.
The District Court in Chandler considered the application of judicial estoppel “to be one of first impression for ... the Eleventh Circuit,” but
jointed] the multitude of courts recognizing the doctrine of judicial estoppel as a bar to a debtor’s assertion of a claim not identified as an asset in an earlier bankruptcy proceeding. In doing so, th[e] court accepted] the two-pronged analysis requiring a demonstration that the assertion of the claim is inconsistent with the earlier non-disclosure and that the assertion of inconsistent positions is an attempt to deliberately manipulate the judicial system.
Id. at 864. Finding that Chandler had been well aware of her duty to inform the Bankruptcy Court of her pending Title VTI suit[15] and had “an obvious motive for concealing her claims against Samford,” the court applied the doctrine and refused to entertain her claims. Id. at 865.
The District Court granted Pemco’s motion for summary judgment on June 4, 2001, six days after the opinion in New Hampshire came down.[16] Mem. Op. at 1, Burnes v. Pemco Aeroplex, Inc., No. 2:99- *1204 cv-03280-WMA (N.D.Ala. June 4, 2001), EOF No. 53. One of the issues Billups presented to this court on appeal was whether New Hampshire effectively overruled Chandler’s judicial-estoppel analysis, which the District Court had applied in reaching its decision. We addressed the issue after restating the Chandler analysis to conform to Eleventh Circuit precedent. Burnes, 291 F.3d at 1285-86. Citing Salomon Smith Barney, Inc. v. Harvey, 260 F.3d 1302, 1308 (11th Cir.2001), vacated on other grounds, 537 U.S. 1085, 123 S.Ct. 718, 154 L.Ed.2d 629 (2002), we said that in deciding whether to apply judicial estop-pel, two factors are considered: (1) whether the party against whom the doctrine is invoked is asserting a position that is inconsistent with a position the party took in a prior proceeding under oath; and (2) whether the party is asserting the inconsistent position with the intent to make a mockery of the judicial system.[17] Bumes, *1205 291 F.3d at 1285. We then acknowledged the three factors that informed the New Hampshire decision:
(1) whether the present position is ‘clearly inconsistent’ with the earlier position; (2) whether the party succeeded in persuading a tribunal to accept the earlier position, so that judicial acceptance of the inconsistent position in a later proceeding creates the perception that either court was misled; and (3) whether the party advancing the inconsistent position would derive an unfair advantage on the opposing party.
Id. (citing New Hampshire, 532 U.S. at 750-51, 121 S.Ct. at 1815). We noted that the Supreme Court had been quick to say that these factors did not constitute “ ‘inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel,’” as “‘[additional considerations may inform the doctrine’s application in specific factual contexts.’ ” Id. (quoting New Hampshire, 532 U.S. at 750-51, 121 S.Ct. at 1815). We accordingly concluded that “the two factors applied in the Eleventh Circuit are consistent with the Supreme Court’s instructions [in New Hampshire], and provide courts with sufficient flexibility in determining the applicability of the doctrine of judicial estoppel based on the facts of a particular case.” Id. at 1285-86.
We then held that each of the two judicial-estoppel factors spelled out in Salo-mon had been met. Id. at 1286-88. First, Billups took an inconsistent position under oath when he represented that he had no assets in the form of pending legal claims despite the fact that he was in the process of pursuing a Title VII claim against Pemco.[18] Id. at 1286. Second, the District *1206 Court did not err when it inferred from the record that Billups intended to make a mockery of the judicial system because he had knowledge of his undisclosed claims and a motive to conceal them.[19] Id. at 1286-88. That Billups stood to gain an advantage by concealing the claims from the Bankruptcy Court was undisputed. Id. at 1288. “It is unlikely he would have received the benefit of a conversion to Chapter 7 followed by a no asset, complete discharge had his creditors, the trustee, or the bankruptcy court known of a lawsuit claiming millions of dollars in damages.” Id.
In an attempt to avoid the dismissal of his claims, Billups argued that he should be permitted to re-open his bankruptcy case to comply with the Bankruptcy Court’s order that he inform the Chapter 7 trustee of his lawsuit against Pemco. Id. We rejected the argument and affirmed the District Court’s judgment. Allowing Billups to re-open his case and amend his bankruptcy filings to reveal his lawsuit against Pemco, “would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtors’ assets.” Id.
The factual predicate that prompted this court to apply the doctrine was this: Bill-ups intentionally concealed from the Bankruptcy Court his claim against Pemco thereby depriving the Chapter 7 trustee of the ability to intervene and prosecute his claim for the benefit of the bankruptcy estate and his creditors. If this court permitted Billups to re-open his bankruptcy case, it would be condoning his behavior, and, to the extent that such behavior would be noised about, it would be encouraging future debtors to follow suit. In short, we would be undermining the administration of the bankruptcy law and the integrity of the judicial process.
We reiterated this concern in Barger v. City of Cartersville, 348 F.3d 1289 (11th Cir.2003). The City of Cartersville demoted Barger from her position as Personnel Director to customer-sales representative on January 8, 2001. Id. at 1291. On July 18, 2001, Barger sued the City in the District Court claiming that her demotion violated the Americans with Disabilities Act, the Age Discrimination in Employment Act, and the Family Medical Leave Act. Id. For relief, she sought reinstatement to her Personnel Director position. Id. On *1207 September 4,2001, Barger, represented by a bankruptcy attorney, petitioned the Bankruptcy Court for Chapter 7 protection. Id. The lawsuit with the City was not disclosed in the Statement of Financial Affairs and Personal Property Schedule B, which the attorney prepared and she signed under penalty of perjury. Id.
On November 7, 2001, after negotiations with the City failed, her employment attorney amended her complaint against the City to add claims for compensatory and punitive damages. Id. The next day, at a meeting of creditors, Barger told her bankruptcy attorney, and in turn, the trustee, about her case against the City. Id. She told them that she was seeking reinstatement to her former position, as Personnel Director, but omitted to say that she was also seeking damages. Id. Despite this, no amendment was made to the Statement of Financial Affairs and Personal Property Schedule B to reflect the pending lawsuit. See id.
The Bankruptcy Court subsequently granted Barger a complete discharge of her debts; it was a “no asset discharge.” Id. When the City learned that Barger had been in bankruptcy and had concealed her case against the City from the Bankruptcy Court, it moved the District Court for summary judgment, asserting that the doctrine of judicial estoppel barred Bar-ger’s claims. Id. Barger responded by moving the Bankruptcy Court to reopen her Chapter 7 case, so that the trustee of her bankruptcy estate could prosecute the pending lawsuit in her stead. Id. at 1291-92. The Bankruptcy Court, over the City’s objection, granted her motion and reopened the case for that purpose, finding that Barger “ ‘did not conceal the [discrimination] claim or attempt to obtain a financial advantage for herself. In the Bánk-ruptcy Court’s estimation, the failure to list the discrimination suit in Barger’s Statement of Financial Affairs was caused by her bankruptcy attorney’s ‘inadvertence’ and had no substantive effect on the bankruptcy petition.” Id. at 1292 (alteration in original). Despite these findings, the District Court granted the City’s motion for summary judgment. Id.
On appeal, we considered the trustee of Barger’s bankruptcy estate the appellant since Barger’s claims constituted property of the estate. Id. at 1292-93. But we attributed to the trustee Barger’s conduct in determining whether the District Court had abused its discretion in invoking judicial estoppel to bar the claims. Id. at 1295.
In seeking the reversal of the District Court’s judgment, the trustee focused on the District Court’s rejection of the Bankruptcy Court’s findings and its substitution for such findings the determination that Barger intended to manipulate the judicial system. Id. The trustee cited the following undisputed facts: (1) Barger’s attorney failed to list her lawsuit against the City in the Statement of Financial Affairs despite the fact that she specifically told him about the suit; (2) Barger informed the trustee about her suit against the City during the creditors’ meeting; and (3) the Bankruptcy Court reopened Barger’s Chapter 7 case so that the trustee could prosecute the suit against the City. Id.
We upheld the District Court’s determination notwithstanding those undisputed facts. As for the first fact, we attributed to Barger her attorney’s failure to list the lawsuit against the City as an asset of the bankruptcy estate because she voluntarily hired the attorney and could not avoid the consequences of his acts or omissions. Id. Her “remedy is against the attorney in a suit for malpractice.” Id. (quotation marks omitted) (quoting Link v. Wabash R.R. Co., 370 U.S. 626, 634 n. 10, 82 S.Ct. 1386, 1390 n. 10, 8 L.Ed.2d 734 (1962)). *1208 But “[e]ven if [her] failure to disclose could be blamed on her attorney, the nondisclosure could not in any event be considered inadvertent” and thus excusable for judicial-estoppel purposes. Id. A “debtor’s failure to satisfy [her] statutory disclosure duty is ‘inadvertent’ only when ... the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment.” Id. at 1296 (quotation marks omitted) (quoting In re Coastal Plains, Inc., 179 F.3d 197, 210 (5th Cir.1999)). Barger obviously had knowledge of the undisclosed claims against the City and she had a motive to conceal the claims because “by omitting the claims, she could keep any proceeds for herself and not have them become part of the bankruptcy estate. Thus, [her] knowledge of her discrimination claims and motive to conceal them [were] sufficient evidence from which to infer her intentional manipulation.” Id. (citing Bumes, 291 F.3d at 1287).
We discounted the second fact for the reason that when asked by the trustee for “the monetary value of the lawsuit, [Bar-ger] informed him that she only sought reinstatement of her previous position with the City of Cartersville. Barger did not tell the trustee that she was also seeking backpay, liquidated damages, compensatory damages, and punitive damages.” Id. As for the third fact, we said this:
Barger’s attempt to reopen the bankruptcy estate to include her discrimination claim hardly casts her in the good light she would like. She only sought to reopen the bankruptcy estate after the defendants moved the district court to enter summary judgment against her on judicial estoppel grounds. “Allowing [a debtor] to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing' them. This so-called remedy would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtor’s assets.” As such, Barger’s disclosure upon re-opening the bankruptcy estate deserves no favor.
Id. at 1297 (alteration in original and citar tion omitted) (quoting Burnes, 291 F.3d at 1288).[20]
C.
The policy the Supreme Court implemented in New Hampshire and this court implemented in Bumes was the same: the protection of “the integrity of the judicial process” by preventing “the perversion” of that process by parties who would “deliberately chang[e] positions according to the *1209 exigencies of the moment.” New Hampshire, 532 U.S. at 749-50, 121 S.Ct. at 1814 (quotation marks omitted). While the policy was the same, the factual contexts of the two cases were as different as night and day. In Burnes, the issue was whether the debtor intentionally concealed the claims he was prosecuting against his employer from the Bankruptcy Court, and if so, whether in prosecuting those same claims in District Court, he intended to make a mockery of the judicial system. The fact that Pemco had established New Hampshire’s second factor — that Billups had “succeeded in persuading [that] court to accept” his position — was not disposi-tive. The concealment of his claims against Pemco had already performed its odious service, undermining the orderly administration of justice in his bankruptcy case. The concealment continued to do that until he was caught. In short, to give dispositive weight to New Hampshire’s second factor would be to hold that judicial estoppel is inapplicable in the Burnes scenario until after the bankruptcy case has run its course and plaintiffs debts have been discharged;
New Hampshire’s third factor is also not dispositive. That factor applies in the New Hampshire scenario but not the Burnes scenario, as is presented in the instant casé. Allowing Slater’s claims to go forward could not — in New Hampshire’s sense of the words — give Slater an “unfair advantage” or impose on U.S. Steel an “unfair detriment” because U.S. Steel had not been burdened with opposing Slater’s claims in the Bankruptcy Court. These words apply only in a two-case setting, where the party asserting the doctrine was a party in the earlier proceeding.
In sum, Slater’s argument that the District Court erred in failing to give these New Hampshire factors appropriate weight, and thus abused its discretion in barring her claims on the judicial estoppel ground, fails.[21]
IV.
Slater argues alternatively that the District Court erred in applying Eleventh Circuit precedent, namely Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282 (11th Cir.2002), and Robinson v. Tyson Foods, Inc., 595 F.3d 1269 (11th Cir.2010). In both of those cases, the Bankruptcy Court had accepted, albeit tacitly, the debtor’s failure to disclose as property of the bankruptcy estate claims the debtor was litigating in federal district court. That is, in each case, the bankruptcy proceeding had run its course. We find no merit in Slater’s argument for two reasons.
First, this court’s precedent in cases involving the non-disclosure in bank *1210 ruptcy of claims the debtor is simultaneously prosecuting in federal district court does not require, as a condition precedent to the application of judicial 'estop-pel, the termination of the bankruptcy proceedings. Whether the bankruptcy proceeding has ended is not dispositive. The factors that trigger the application of the doctrine are (1) an inconsistent position taken under oath in the Bankruptcy Court, and (2) advancing an inconsistent position in the District Court with the intent to make a mockery of justice.
Second, to condition the invocation of judicial estoppel on what transpires in the bankruptcy case after the debtor’s failure to list the claim being litigated in the District Court has been discovered would, as the Bumes Court explained, “only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtors’ assets.” Bumes, 291 F.3d at 1288.
V.
For the foregoing reasons, the judgment of the District Court is
AFFIRMED.

. "The majority rule is that a party is not required to have been a party to the prior proceeding to be able to invoke judicial estop-pel.” 18 James Wm. Moore et al., Moore’s Federal Practice, ¶ 134.33[1] (3d ed.2015).

. Slater’s complaint contained three counts. In Count One, Slater alleged that U.S. Steel discriminated against her on the basis of gender, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000e et seq. ("Title VII”), when U.S. Steel (1) refused to count the time Slater spent in its Gary, Indiana mill toward her seniority status at its Fairfield, Alabama mill; (2) assigned Slater to perform menial janitorial duties; and (3) refused to train Slater to operate heavy machinery. In addition, the District Court interpreted Count One to make out a "claim for sex discrimination based on quid pro quo discrimination.”
In Count Two, Slater alleged that U.S. Steel retaliated against her, in violation of Title VII and 42 U.S.C. § 1981, when it laid her off after she complained about (1) "racial and sexual discrimination” and (2) U.S. Steel's decision to retain a white woman with less than three years of service at U.S. Steel, while laying off more-senior African-American employees during a round of layoffs supposedly restricted to employees with three years of service or less.
In Count Three, Slater attempted to recast each of the previous allegations as "racial and *1196 sexual discrimination,” in violation 42 U.S.C, § 1981.

.The District Court correctly granted U.S. Steel summary judgment on Slater’s claim for racial discrimination based on disparate treatment "because ... [Slater] failed to present evidence that ... [U.S. Steel] treated similarly situated white employees more favorably and ha[d] failed to establish her prima facie case on th[e] claim.” We agree. We review the District Court’s grant of summary judgment de novo. Cook v. Bennett, 792 F.3d 1294, 1298 (11th Cir.2015). As part of her prima facie case, Slater needed to prove: (1) she belonged to a protected class; (2) she was qualified for her job; (3) she suffered an adverse employment action; and (4) the employer treated a similarly situated employee outside of her protected class more favorably. Flowers v. Troup Cty. Sch. Dist., 803 F.3d 1327, 1336 (11th Cir.2015); Maynard v. Bd. of Regents, 342 F.3d 1281, 1289 (11th Cir.2003) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973)). Slater, who is black, contended that Carolyn Farless, a white woman, is a similarly situated employee outside of Slater's protected class who was treated more favorably because Farless had been allowed to transfer service time earned at a different worksite to Farless’s current worksite to count toward her seniority status, while Slater was not able to transfer her service time. Farless is not a proper comparator because, unlike Slater, she was not a transfer employee. Similarly situated employees must be "nearly identical to the plaintiff in order 'to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.’ ” Silvera v. Orange Cty. Sch. Bd., 244 F.3d 1253, 1260 (11th Cir.2001) (quoting Maniccia v. Brown, 171 F.3d 1364, 1368-69 (11th Cir.1999)).
Slater also argues that Ricci v. DeStefano, 557 U.S. 557, 577-78, 129 S.Ct. 2658, 2672-73, 174 L.Ed.2d 490 (2009) (discussing the prohibition on disparate-impact discrimination), applies to her claim for racial discrimination. Because this argument was raised for the first time on appeal; we decline to address it. See, e.g., Reider v. Philip Morris USA, Inc., 793 F.3d 1254, 1258 (11th Cir.2015).
The other claims disposed of on summary judgment that Slater has not appealed are affirmed by operation of law.

. Chapter 7 Voluntary Pet., In re Slater, No. 11-02865 (Bankr.N.D.Ala. June 2, 2011), ECF No. 1.

. A no-asset bankruptcy case is one in which no non-exempt assets are sold to pay the debtor's creditors. See Barger v. City of Cartersville, 348 F.3d 1289, 1291 (11th Cir.2003) ("Since it was a 'no asset discharge’, no assets were distributed and the trustee was relieved of all further duties.”); In re Baitcher, 781 F.2d 1529, 1530 (11th Cir.1986) ("It had been a ‘no assets’ bankruptcy in which all the creditors got nothing.”),

. Once Slater petitioned the Bankruptcy Court for Chapter 7 relief, all of her assets, including her claims against U.S. Steel, became assets of the bankruptcy estate by operation of law. See 11 U.S.C. § 541 (2012). Only the trustee of the bankruptcy estate would have standing to pursue her claims against U.S. Steel.

. See Br. of U.S. Steel in Supp. of Mot. to Dismiss Compl. or, in the alternative, for Summ. J. at 6, Slater v. U.S. Steel Carp., No. 2:09-cv-01732-KOB (N.D.Ala. Aug. 16, 2011), ECF No. 67 (citing the following employment-discrimination cases: Robinson v. Tyson Foods, Inc., 595 F.3d 1269, 1272 (11th Cir.2010); Barger, 348 F.3d at 1297; De Leon v. Comcar Indus., Inc., 321 F.3d 1289, 1292 (11th Cir.2003); Burnes, 291 F.3d at 1289; Pavlov v. Ingles Mkts., Inc., 236 Fed.Appx. 549, at *1 (11th Cir.2007); Casanova v. Pre Sob., Inc., 228 Fed.Appx. 837, at *2 (11th Cir.2007); Hands v. Winn-Dixie Stores, Inc., No. 09-0619-WS-N, 2010 WL 4496798, at *5 (S.D.Ala. Nov. 1, 2010)).

.Fed. R. Bankr.P. 1009(a) ("A voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed.”).

. "The Chapter 13 debtor remains in possession of all property of the estate, both exempt and non-exempt.” David S. Kennedy, Chapter 13 Under the Bankruptcy Code, 19 Mem. St. U.L.Rev. 137, 139 (1989) (citing 11 U.S.C. § 1306(b) (2012)). The debtor in possession has many of the rights and powers of a trustee. See 11 U.S.C. § 1303 (2012). The debt- or in possession also retains standing to pursue a claim of the bankruptcy estate. Crosby v. Monroe Cty., 394 F.3d 1328, 1331 n. 2 (11th Cir.2004) (citing 11 U.S.C. § 1303; Fed. R. Bankr.P. 6009; In re Mosley, 260 B.R. 590, 595 (Bankr.S.D.Ga.2000)).

. The District Court observed that Slater failed to address Bumes, Robinson, and the similar decisions U.S. Steel cited in its Brief in Support of Motion to Dismiss Complaint or, in the alternative, for Summary Judgment. Slater chose, instead, to rely on the fact that her failure to disclose the claims against U.S. Steel was "inadvertent and has ... been rectified,” that the Bankruptcy Court took "no final action” on the failure, and that U.S. Steel had suffered no harm.

. Slater’s opening brief on appeal does not frame the argument alternatively. We do so because, giving the brief a fair reading, we sense that Slater is contending that the District Court misapplied New Hampshire and Eleventh Circuit precedent.

. Slater also argues that judicial estoppel is not applicable here because the bankruptcy trustee is the real party in interest, and the bankruptcy trustee has not made any inconsistent statements. This argument fails per our precedent in Barger, where we attributed the debtor's inconsistent statements to the bankruptcy trustee. See Barger v. City of Cartersville, 348 F.3d 1289, 1292-93, 1296-97 (11th Cir.2003). Furthermore, Slater’s bankruptcy case was converted to a Chapter 13 case by the time the motion for summary judgment was filed, meaning that she was, in fact, a real party in interest as the debtor in possession. 11 U.S.C. § 1303; Fed. R. Bankr.P. 6009; Crosby v. Monroe Cty., 394 F.3d 1328, 1331 n. 2 (11th Cir.2004).
Additionally, Slater argues that judicial es-toppel is inapplicable to a claim for injunctive relief. Because this argument was raised for the first time on appeal, we decline to address it. See, e.g., Reider v. Philip Morris USA, Inc., 793 F.3d 1254, 1258 (11th Cir.2015).

.The Supreme Court has implied that the doctrine of judicial estoppel applies in the Bumes scenario. Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 807, 119 S.Ct. 1597, 1604, 143 L.Ed.2d 966 (1999). In that case, the Fifth Circuit had affirmed the District Court’s application of judicial estoppel to bar *1201 summary judgment on the plaintiff's claim against her former employer under the Americans with Disabilities Act of 1990 that " 'with ... reasonable accommodation’ she could 'perform the essential functions' of her job,” id. at 797, 119 S.Ct. at 1599-1600, because in an earlier case she had obtained Social Security disability benefits by taking the position that she was unable to perform her job. The Supreme Court granted certiorari, vacated the Fifth Circuit’s judgment, and remanded the case for further proceedings because
[w]hen faced with a plaintiff’s previous sworn statement asserting "total disability” or the like, the court should require an explanation of any apparent inconsistency with the necessary elements of an ADA claim. To defeat summary judgment, that explanation must be sufficient to warrant a reasonable juror’s concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless "perform the essential functions” of her job, with or without "reasonable accommodation.”
Id. at 807, 119 S.Ct. at 1604.
We note that the Supreme Court did not cite Cleveland in its New Hampshire decision. In New Hampshire, the Court recognized that judicial estoppel applies in a variety of contexts and then went on to articulate factors particularly relevant to cases involving the same parties in two proceedings. New Hampshire, 532 U.S. at 749-51, 121 S.Ct. at 1814-15. From this, one might infer that the Supreme Court considers the New Hampshire scenario and the Bumes scenario to involve entirely different settings.

, We pause here to state that the instant case and Bumes differ in one respect. In Bumes, the bankruptcy case in which the debtor, Billups, asserted the inconsistent position was no longer pending when the District Court applied judicial estoppel to bar his employment-discrimination claims. In the instant- case, by contrast, Slater’s bankruptcy case was still pending when the District Court applied the doctrine. As we indicate infra Part IV., this difference is not material.

. Chandler had attended law school and testified that bankruptcy law was one of her favorite classes. Chandler, 35 F.Supp.2d at 865.

. The opinion in New Hampshire issued on May 29, 2001. Rehearing was denied on August 6, 2001. New Hampshire v. Maine, 533 U.S. 968, 122 S.Ct. 10, 150 L.Ed.2d 793 (2001) (Mem.).

. Salomon Smith Barney, Inc. involved a dispute over the arbitrability of certain claims. Salomon Smith Barney ("Smith Barney”), an investment firm, recommended that Harvey and others purchase limited partnerships that were unsuitable for their investment objectives. 260 F.3d at 1304-05. The case did not present a Bumes scenario. Rather, it presented a New Hampshire scenario in that the party asserting judicial estoppel, Harvey, was a party in the prior proceeding, which was an appeal taken by Smith Barney to the Florida District Court of Appeal. Id. at 1305. Nor did the case before the District Court involve a false statement made under oath in that case or the state-court case on appeal. The allegedly inconsistent statement was in the form of an argument Smith Barney made in that appeal, an argument the panel held was not inconsistent with the position Smith Barney was taking in the District Court. Id. at 1308 ("Smith Barney did not maintain inconsistent positions, but rather it continuously argued that Florida was an inconvenient forum.”). The Salomon Court therefore rejected Harvey’s argument that the District Court should have estopped Smith Barney from pursuing the position it was taking, i.e., that the District Court should exercise jurisdiction over the case it had filed. Id.
Although the panel did not estop Smith Barney — because it had not pursued inconsistent positions in the two cases — it described judicial estoppel thusly:
Judicial estoppel "is applied to the calculated assertion of divergent sworn positions ... [and] is designed to prevent parties from making a mockery of justice by inconsistent pleadings.” McKinnon v. Blue Cross & Blue Shield of Ala., 935 F.2d 1187, 1192 (11th Cir.1991) (citation omitted). This circuit’s approach contemplates two elements. First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system.
Id. Salomon was decided on August 9, 2001, three days after the Supreme Court denied rehearing in New Hampshire, and thus, quite understandably, did not cite the New Hampshire decision.
By way of historical background, the quotation attributed to McKinnon was taken from American National Bank v. Federal Deposit Insurance Corporation, 710 F.2d 1528, 1536 (11th Cir.1983). American National Bank cited Johnson Service Co. v. TransAmerica Insurance Co., 485 F.2d 164, 174 (5th Cir.1973), a diversity case based on Texas common law, as the authority for the doctrine. "Judicial es-toppel is applied to the calculated assertion of divergent sworn positions. The doctrine is designed to prevent parties from making a mockery of justice by inconsistent pleadings.” Am. Nat’l Bank, 710 F.2d at 1536 (citing Johnson Serv., 485 F.2d at 174),
The Salomon Court relied specifically on two cases in articulating the elements of judicial estoppel. The first case was Taylor v. Food World, Inc., 133 F.3d 1419 (11th Cir.1998), Taylor presented a Bumes scenario. Gary Taylor’s guardian sued Taylor’s employer claiming that the employer had terminated Taylor in violation of his rights under the Americans with Disabilities Act (“ADA”), 42 U.S.C. § 12101 et seq., and seeking reinstatement. Id. at 1421. While the suit was pending, the guardian obtained supplemental security income benefits on Taylor’s behalf. Id. The District Court, applying the doctrine of judicial estoppel, dismissed the ADA claim. On appeal, we described judicial estoppel in the words the court in McKinnon used: "Judicial estoppel ‘is applied to the calculated *1205 assertion of divergent sworn positions ... [and] is designed to prevent parties from making a mockery of justice by inconsistent pleadings.’ ” Id, at 1422 (quoting McKinnon, 935 F.2d at 1192). We reversed the dismissal on the ground that "[t]he medical records [Taylor] submitted to the SSA do not clearly contradict his assertion that he is 'qualified’ under the ADA.” Id, at 1423.
The second case was Johnson Service. In that case, the former Fifth Circuit applied the doctrine of judicial estoppel as formulated by Texas common law. 485 F.2d at 174. In Chrysler Credit Corporation v. Rebhan, which presented a New Hampshire scenario, this court cited Johnson Service in formulating for the first time in the Eleventh Circuit the doctrine of judicial estoppel as a matter of federal law. Chrysler Credit Corp. v. Rebhan, 842 F.2d 1257, 1261 (11th Cir.1988), abrogated on other grounds by Grogan v. Garner, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) ("The policy interests [which gave rise to the doctrine] are simply stated by the doctrine itself. The doctrine of judicial estoppel 'is directed against those who would attempt to manipulate the court system through the calculated assertion of divergent sworn positions in judicial proceedings.’ ” (quoting Johnson Serv., 485 F.2d at 174)).

. The Chapter 13 schedule-of-assets form Billups filed with his Chapter 13 petition "specifically asked [him] to report any contingent or unliquidated claims of any kind." Burnes, 291 F.3d at 1284, We held that Bill-ups’s duty to disclose all of his assets was a "continuing one” that did not end with his submission of the form. Id. at 1286. Rather, he was required to amend the form to reveal the lawsuit against Perneo. The Bankruptcy Court reinforced this continuing duty to disclose when, as part of its conversion of his Chapter 13 case to a Chapter 7 case, the court ordered Billups to submit "amended or updated schedules ... [to] reflect[ ] any financial changes” that had occurred since the filing of his Chapter 13 petition. Id. at 1284. Billups amended his schedules, but he failed to list his Title VII claim and the pending litigation. We treated the failure as a false statement under oath that he had no Title VII claim.
In Ajaka v. BrooksAmerica Mortgage Corporation, 453 F.3d 1339 (11th Cir.2006), we considered the debtor’s failure to "amend his Chapter 13 reorganization plan to reflect his contingent [Truth in Lending Act] claim” as taking an "inconsistent position[ ] ... under oath in a prior proceeding.” 453 F.3d at 1344 (quoting Burnes, 291 F.3d at 1285). "Because ... Ajaka failed to assert his TILA *1206 claim as an asset in the bankruptcy proceeding, the first [factor] of our judicial estoppel test is satisfied. See [Burnes, 291 F.3d] at 1285 (finding similar failure to disclose in bankruptcy proceeding to satisfy the first factor).” Id.; see also Robinson v. Tyson Foods, Inc., 595 F.3d 1269, 1275 (11th Cir.2010) ("By failing to update her bankruptcy schedule to reflect her pending claim, Robinson represented that she had no legal claims to the bankruptcy court while simultaneously pursuing her legal claim against Tyson in the district court. These actions, both taken under oath, are clearly inconsistent. Therefore, in accordance with Ajaka, Robinson took inconsistent positions under oath and the issue of judicial estoppel centers on her intent.”).

. Billups argued that he did not have "the requisite intent to mislead the bankruptcy court.” Burnes, 291 F.3d at 1286. He claimed that an "inadvertent error resulted in the continued omission of his discrimination claim from his bankruptcy schedules.” Id. But, as we indicate supra Part I.B., Billups’s failure to inform the Bankruptcy Court of his discrimination claim was not inadvertent. Such failure is "inadvertent only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment.” Id. at 1287 (quotation marks omitted) (quoting In re Coastal Plains, Inc., 179 F.3d 197, 210 (5th Cir.1999)); see also Robinson, 595 F.3d at 1275, In Burnes, the "undisputed facts ma[d]e it clear that Billups had knowledge of his claims during the bankruptcy proceedings .... [and] stood to gain an advantage by concealing the claims from the bankruptcy court.” Burnes, 291 F.3d at 1288,

. We note in passing that Parker v. Wendy's International, Inc., 365 F.3d 1268 (11th Cir.2004), is factually on all fours with Barger, but reached the opposite result. In that case, the District Court attributed to the trustee of Parker’s bankruptcy estate Parker’s failure to disclose a Title VII claim of racial discrimination she had brought against Wendy’s and then applied the doctrine of judicial estoppel to bar the trustee’s prosecution of the claim. Id. at 1270-71. The trustee appealed. We reversed, observing that "the claim against Wendy’s belonged] to the bankruptcy estate and its representative, the trustee[,]” not Parker, the debtor. Id. at 1273. "The trustee made no false or inconsistent statement under oath in a prior proceeding and [was] not tainted or burdened by the debtor's misconduct.” Id.
In contrast, Barger held that the trustee was bound by the debtor’s failure to disclose in her bankruptcy filings that the claims she was prosecuting were assets of the bankruptcy estate.
Under our prior-panel-precedent rule, United States v. Puentes-Hurtado, 794 F.3d 1278, 1287 (11th Cir.2015), we are bound to follow Barger and to disregard Parker’s holding to the contrary.

. This court has applied the three New Hampshire factors in cases presenting the New Hampshire scenario. See, e.g., Tampa Bay Water v. HDR Eng'g, Inc., 731 F.3d 1171 (11th Cir.2013); Riviera Beach v. That Certain Unnamed Gray, Two-Story Vessel Approximately Fifty-Seven Feet in Length, 649 F.3d 1259 (11th Cir.2011), rev'd on other grounds sub nom. Lozman v. City of Riviera Beach, 568 U.S.-, 133 S.Ct. 735, 184 L.Ed.2d 604 (2013). Both of these decisions involved straightforward applications of New Hampshire and Zedner v. United States, 547 U.S. 489, 126 S.Ct. 1976, 164 L.Ed.2d 749 (2006), which applied New Hampshire's three disposi-tive factors. Neither Eleventh Circuit decision cites the two judicial-estoppel factors Burnes relied on, (1) the party against whom the doctrine is invoked is asserting a position that is inconsistent with a position the party took in a prior proceeding under oath and (2) the party is asserting the inconsistent position with the intent to make a mockery of the judicial system. And neither decision refers to the prior inconsistent position as being under oath. The impression is thus created that the’ oath requirement applies only in cases presenting the Burnes scenario, with its focus on false statements made in the Bankruptcy Court under penalty of perjury.